**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JOHNNY PERRYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV305 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Johnny Perryman, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 13 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 16, 18; see also Docket Entry 16-1 (Plaintiff's Brief); Docket Entry 19 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 223-31), alleging a disability onset date of December 15, 2015 (see Tr. 224). Upon denial of that application initially (Tr. 68-75, 87-95) and on reconsideration (Tr. 76-84, 96-105), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 106-08). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 37-67.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-20.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 220-22, 331-33), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since December 15, 2015, the alleged onset date.
>
> 2. [Plaintiff] has the following severe impairments: degenerative disc disease with radiculopathy and sciatica.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs; never kneel or crawl; occasionally balance,

2

stoop, or crouch; occasionally push or pull with the legs; never work near or around heights or dangerous machinery; and sit or stand at 30 to 45 minute intervals.

. . .

5. [Plaintiff] is unable to perform any past relevant work.

. . .

9. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

10. [Plaintiff] has not been under a disability, as defined in the . . . Act, from December 15, 2015, through the date of this decision.

(Tr. 16-20 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

3

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

4

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

---

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

('RFC').'' Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred in penalizing Plaintiff for his failure to afford medical treatment" (Docket Entry 16-1 at 3 (bold font and single-spacing omitted)); and

2) "[t]he ALJ failed to properly evaluate Plaintiff's complaints, failing to articulate 'specific and adequate reasons' for discounting his testimony" (id. at 7 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 19 at 4-10.)

### 1. Inability to Afford Medical Treatment

Plaintiff's first issue on review argues that "[t]he ALJ erred in penalizing Plaintiff for his failure to afford medical treatment."  (Docket Entry 16-1 at 3 (bold font and single-spacing omitted).)  In particular, Plaintiff maintains that, although the ALJ acknowledged that Plaintiff "'was working with financial counseling as he d[id] not have medical insurance,'" the ALJ then observed that Plaintiff "'ha[d] not generally received the type of medical treatment one would expect for a disabled individual,'" as well as noted the gap in treatment between 2017 and 2020.  (Id. at 4 (quoting Tr. 17).)  Plaintiff points out that "'[a]n ALJ should not discount a claimant's subjective complaints on the basis of

8

[his] failure to seek medical treatment when [he] has asserted – and the record does not contradict – that [he] could not afford such treatment.'"  (Id. at 3-4 (quoting Starnes v. Kijakazi, No. 2:20CV3372, 2021 WL 4155648, at *5 (D.S.C. Aug. 18, 2021) (unpublished), recommendation adopted, 2021 WL 4155216 (D.S.C. Sept. 13, 2021) (unpublished)).)  According to Plaintiff, "[w]here there is evidence that Plaintiff had an impairment and further evidence that he may not have had the resources to properly treat that impairment, an ALJ must make findings as to whether Plaintiff was unable to get healthcare due to an inability to afford it." (Id. at 6 (citing Dozier v. Colvin, No. 1:14CV29, 2015 WL 4726949, at *3 (D.S.C. Aug. 10, 2015) (unpublished)).)  Those contentions have merit and warrant remand.

The United States Court of Appeals for the Fourth Circuit has held that "[a] claimant may not be penalized for failing to seek treatment [ ]he cannot afford," because "'[i]t flies in the face of the patent purposes of the . . . Act to deny benefits to someone . . . too poor to obtain medical treatment that may help him.'" Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)).  An administrative ruling further expounds on an ALJ's duties when a claimant alleges an inability to afford treatment as follows:

> . . . [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . [the ALJ] may find the alleged intensity and persistence of an

9

individual's symptoms are inconsistent with the overall evidence of record. [The ALJ] will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints. [The ALJ] may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not . . . sought treatment in a manner consistent with his or her complaints. When [the ALJ] consider[s] the individual's treatment history, [the ALJ] may consider (but [is] not limited to) one or more of the following:

. . .

An individual may not be able to afford treatment and may not have access to free or low-cost medical services.

. . .

[An ALJ] will consider and address reasons for not pursuing treatment that are pertinent to an individual's case. [The ALJ] will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them. [The ALJ] will explain how [he or she] considered the individual's reasons in [the ALJ's] evaluation of the individual's symptoms.

Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *9-10 (Oct. 25, 2017) ("SSR 16-3p") (emphasis added) (bullet omitted).

Here, Plaintiff testified that he had lived in an apartment for two years with a friend who paid the rent and utilities (see Tr. 44-45), that he had unsuccessfully applied for food stamps (see Tr. 45-46), that he started treating with Dr. Christopher Hong Chu in April 2020 (see Tr. 60), who helped Plaintiff gain entry into a

10

program called Health Care Access involving $10 co-pays (see Tr. 52-53), and that, before his entry into Health Care Access, he "had been going back and forth to just the emergency room" (Tr. 60). The record corroborates Plaintiff's testimony, in that an August 2017 treatment note reflects that Plaintiff had recently sought treatment in the Forsyth emergency room for sciatic nerve pain, and that he "[wa]s currently working with financial counseling as he d[id] not have medical insurance." (Tr. 339 (emphasis added).) Consistent with Plaintiff's testimony, no treatment records exist after November 2017 until Dr. Chu referred Plaintiff to orthopedist Dr. Alejandro Jose Marquez-Lara, who evaluated Plaintiff on February 14, 2020. (See Tr. 359.) Plaintiff sought regular treatment for his sciatic pain after that time. (See Tr. 388-415.)

The ALJ provided the following analysis of Plaintiff's alleged inability to afford treatment:

> As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of his . . . symptoms, they are inconsistent because the record confirms a diagnosis and treatment for chronic bilateral low back pain with bilateral sciatica dating back to 2017; however, [Plaintiff] has not generally received the type of medical treatment one would expect for a disabled individual. The record does note that he was working with financial counseling as he d[id] not have medical insurance. After the diagnosis and treatment in 2017, the record jumps to treatment in 2020.

(Tr. 17 (emphasis added) (internal parenthetical citations omitted).) For the reasons explained more fully below, that analysis runs afoul of SSR 16-3p.

As the above-quoted analysis shows, the ALJ here <u>both</u>
acknowledged that Plaintiff asserted an inability to afford medical
treatment to explain the gap in treatment between 2017 and 2020 <u>and</u>
that evidence in the record corroborated that assertion (<u>see</u> Tr. 17
(observing that "record d[id] note that [Plaintiff] was working
with financial counseling as he d[id] not have medical insurance)).
The ALJ, however, then inexplicably found Plaintiff's subjective
symptom reporting "inconsistent because . . . [he] had not
generally received the type of medical treatment one would expect
for a disabled individual" (<u>id.</u>).   In other words, the ALJ
"review[ed] the case record [and] determine[d ] there [we]re
explanations for [Plaintiff's lack of medical treatment], and
[that] the evidence of record support[ed his] statements at the
time he . . . made them," but the ALJ thereafter rejected
Plaintiff's alleged inability to afford treatment without <u>any</u>
"expla[nation of] <u>how</u> [the ALJ] considered [Plaintiff]'s reasons in
[the ALJ's] evaluation of [Plaintiff]'s symptoms," SSR 16-3p, 2017
WL 5180304, at *9-10 (emphasis added).   (<u>See</u> Tr. 17.)   The ALJ's
failure of explanation precludes meaningful review by this Court of
the ALJ's determination.   <u>See</u> <u>Elmore v. Berryhill</u>, No. CV
6:17-2480, 2018 WL 5724121, at *13 (D.S.C. Oct. 12, 2018)
(unpublished) ("[B]ecause the plaintiff presented significant
evidence to suggest she was unable to afford additional medical
treatment by specialists, the ALJ erred in considering her failure

12

to obtain treatment by specialists after mid-2013 as a factor that reduced the credibility of her allegations without also considering her reasons for not obtaining additional treatment."), recommendation adopted, 2018 WL 5719643 (D.S.C. Oct. 31, 2018) (unpublished); Sapp v. Berryhill, No. CV 1:17-2442, 2018 WL 5270039, at *11 (D.S.C. Sept. 28, 2018) (unpublished) ("The ALJ's decision relied upon [the p]laintiff's lack of consistent treatment to discount her allegations, but failed to address the 'reasons for not pursuing treatment' pursuant to SSR 16-3p. In particular, the ALJ failed to address the evidence in the record relaying [the p]laintiff was 'not [] able to afford treatment' as required by SSR 16-3p and Fourth Circuit precedent." (quoting Lovejoy, 790 F.2d at 1117)), recommendation adopted, 2018 WL 5266584 (D.S.C. Oct. 23, 2018) (unpublished); compare Byers v. Berryhill, No. 1:17CV103, 2018 WL 318466, at *9 (M.D.N.C. Jan. 5, 2018) (unpublished) (finding no error in ALJ's rejection of the plaintiff's alleged inability to afford treatment where ALJ specifically found that "there [wa]s no indication that [the plaintiff] ha[d] explored the availability of free or reduced cost medical services," that "it [wa]s incumbent on [the plaintiff] to explore such availability rather than simply concluding that he c[ould ]not pay for any medical care," that "a hospital emergency room [could] not refuse care based on an individual's inability to pay for care," that, "if [the plaintiff] had the extreme pain and functional limitations to

13

which he testified, . . . it would be reasonable to expect that he would seek treatment, at least on occasion, rather than simply enduring the purported extreme pain and functional limitations," and that "[the plaintiff] was not reticent to seek medical treatment when he had a seizure, which . . . undermine[d] the credibility of his testimony regarding his failure to seek medical treatment"), recommendation adopted, slip op. (M.D.N.C. Apr. 4, 2018) (Tilley, S.J.). As explained more fully in connection with Plaintiff's second issue on review, that error by the ALJ does not qualify as harmless.

In light of the foregoing analysis, Plaintiff's first assignment of error establishes prejudicial error, requiring remand.

## 2. Analysis of Plaintiff's Subjective Symptom Reporting

Plaintiff's second and final assignment of error maintains that "[t]he ALJ failed to properly evaluate Plaintiff's complaints, failing to articulate 'specific and adequate reasons' for discounting his testimony." (Docket Entry 16-1 at 7 (bold font and single-spacing omitted).) In that regard, Plaintiff emphasizes that "[t]he ALJ found that Plaintiff's impairments were inconsistent with the medical evidence in the record 'for the reasons explained in th[e ALJ's] decision,'" (id. at 9 (quoting Tr. 17)), but beyond the finding "that Plaintiff did not treat enough . . . [t]he ALJ's remaining rationale seems to be absent"

14

(id.).  Plaintiff further points out that, although "the ALJ d[id]
discuss some record evidence after[ his finding regarding
Plaintiff's lack of treatment]" (id. (citing Tr. 17-18), "[t]o any
extent this presents rationale, it would also be inadequate[
because] Plaintiff's subjective complaints have an objective basis"
(id.; see also id. at 8-10 (summarizing Plaintiff's subjective
complaints and detailing evidence Plaintiff believes supports those
complaints (citing Tr. 43, 53-57, 359, 362-63, 399, 404-06, 413))).
Plaintiff's arguments further solidify the grounds for remand
established in his first assignment of error.

SSR 16-3p (consistent with the Commissioner's regulations)
adopts a two-part test for evaluating a claimant's statements about
symptoms.  See SSR 16-3p, 2017 WL 5180304, at *3; see also 20
C.F.R. § 416.929.  First, the ALJ "must consider whether there is
an underlying medically determinable physical or mental
impairment(s) that could reasonably be expected to produce an
individual's symptoms, such as pain."  SSR 16-3p, 2017 WL 5180304,
at *3.  A claimant must provide "objective medical evidence from an
acceptable medical source to establish the existence of a medically
determinable impairment that could reasonably be expected to
produce [the] alleged symptoms."  Id.  Objective medical evidence
consists of medical signs ("anatomical, physiological, or
psychological abnormalities established by medically acceptable
clinical diagnostic techniques") and laboratory findings "shown by

15

the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

16

7. Any other factors concerning an individual's
    functional limitations and restrictions due to pain or
    other symptoms.

Id. at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added).

In this case, the ALJ found, at part one of the subjective symptom analysis, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but then determined, at part two, that his "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Tr. 17 (emphasis added).) In the very next paragraph, the ALJ deemed Plaintiff's "statements about the intensity, persistence, and limiting effects of his . . . symptoms . . . inconsistent because the record confirm[ed] a diagnosis and treatment for chronic bilateral low back pain with bilateral sciatica dating back to 2017," but Plaintiff "ha[d] not generally received the type of medical treatment one would expect for a disabled individual" as, "[a]fter the diagnosis and treatment in 2017, the record jump[ed] to treatment in 2020." (Tr. 17.)

17

As discussed above in the setting of Plaintiff's first issue on review, the ALJ did not adequately explain his decision to reject Plaintiff's alleged inability to afford treatment, and the ALJ did not, in that same paragraph, offer any other reason for discounting Plaintiff's subjective symptom reporting (see id.). Moreover, the ALJ did not discuss Plaintiff's ability to engage in daily activities (see Tr. 16-18), despite the fact that Plaintiff completed a Function Report on which he detailed his ability to engage in such activities (see Tr. 270-77). Significantly, the ALJ could not have supported his subjective symptom evaluation with any medical opinion evidence, because the only opinions the ALJ considered (and deemed "minimally persuasive") came from the state agency medical consultants (Tr. 18), who offered their opinions in June 2018 and March 2019 (see Tr. 68-74, 76-83), i.e., well prior to Plaintiff entering the Health Care Access program and resuming regular treatment in February 2020 (see Tr. 359-63), and thus found insufficient evidence to analyze Plaintiff's impairments and their functional limitations (see Tr. 68-74, 76-83).[6]

As Plaintiff argues (see Docket Entry 16-1 at 9), the ALJ did thereafter provide a one-paragraph summary of the medical evidence

---

[6] Although not raised by either party (see Docket Entries 16-1, 19), the ALJ neglected to evaluate the persuasiveness of an opinion offered by Dr. Marquez-Lara on February 14, 2020 (see Tr. 18; see also Tr. 373-74 (opining, in "To Whom It May Concern" letter, as follows: "It is my medical opinion that [Plaintiff] has severe spinal stenosis. Because of this he has nerve damage to [his] left leg resulting in weakness and muscle atrophy [and is] unable to work full duty. He may likely require a large lumbar spine surgery in the near future, but even with the intervention there is low likelihood of restoration of full function."). On remand, the ALJ should discuss the persuasiveness of that opinion.

18

(see Tr. 17-18); however, that summary describes many findings that underline support Plaintiff's reports of disabling back and sciatic pain (see Tr. 17 (describing February 2020 orthopedic examination finding lumbar tenderness to palpation, antalgic gait, pain on lumbar range of motion, and strength deficit in left leg that surgery might not correct (citing Tr. 362-63); see also Tr. 18 (noting April 2020 MRI of lumbar spine found "multilevel degenerative changes resulting in moderate to advanced stenosis, and a synovial cyst" (emphasis added) (citing Tr. 413))).[7] Although the ALJ did note Plaintiff's report "in June 2020 . . . that Aleve/Naproxen alleviate[d] the

---

[7] Notably, the ALJ did not include in his summary the orthopedist's findings that Plaintiff displayed an antalgic posture leaning to the right (see Tr. 362), decreased sensation in the left leg in an L3-5 distribution (see Tr. 363), and "[o]bvious left quad[riceps] atrophy" (id. (emphasis added)). (See Tr. 17-18.) The ALJ's cursory description of Plaintiff's lumbar spine MRI also fails to capture the significance of its findings (see Tr. 18), which include:

> L2-L3: Degenerative disc disease with posterior broad-based disc bulge, superimposed right foraminal and extraforaminal disc protrusion, mild degenerative facet disease, and ligamentum flavum thickening resulting in mild to moderate central stenosis, right greater than left lateral recess stenosis, as well as moderate right and mild left foraminal stenosis.
> L3-L4: Degenerative disc disease with posterior broad-based disc bulge, mild degenerative facet hypertrophy, and ligamentum flavum thickening resulting in moderate to advanced canal and lateral recess narrowing, as well as moderate right and advanced left foraminal stenosis.
> L4-L5: Degenerative disc disease with posterior broad-based disc bulge, superimposed posterior central disc herniation dissecting superiorly in the epidural space, bilateral degenerative facet hypertrophy, and ligamentum flavum thickening results in moderate to advanced central and lateral recess stenosis, as well as advanced left greater than right foraminal stenosis.
> L5-S1: Posterior broad-based disc bulge combined with bilateral degenerative facet hypertrophy, ligamentum flavum thickening, and ventromedial oriented synovial cyst arising from the right L5-S1 facet joint extending into the right lateral recess with compression of the descending right S1 and S2 nerve roots. Overall mild central stenosis as well as advanced right greater than left foraminal stenosis.

(Tr. 412-13 (emphasis added).)

19

symptoms, and Gabapentin alleviated the paresthesias" (Tr. 18 (citing Tr. 399)), as well as that Plaintiff "displayed a full range of motion[ and] no tenderness to palpation" (id. (citing Tr. 401)), the ALJ did not mention that the same examination documented reduced strength and sensation in Plaintiff's left leg (see id.; see also Tr. 401). The ALJ's incomplete and relatively one-sided summarization of the medical evidence, standing alone, simply does not adequately support the ALJ's decision to discount Plaintiff's subjective symptom reporting, particularly given the inadequate consideration of the matters addressed in connection with the first issue on review. See Worsham v. Kijakazi, No. 4:20CV86, 2021 WL 3878898, at *7 (E.D.N.C. July 28, 2021) (unpublished) ("While the ALJ cited other reasons in support of the RFC determination, the decision appears to rest largely on . . . [the plaintiff]'s failure to return to [a physician] to pursue surgical options [due to an inability to afford such treatment]. The ALJ's failure to properly address th[at] issue makes it impossible for the court to know how much weight the ALJ placed on this factor or to trace the ALJ's reasoning."), recommendation adopted, 2021 WL 3863348 (E.D.N.C. Aug. 30, 2021) (unpublished); Elmore, 2018 WL 5724121, at *13 (deeming ALJ's failure to consider the plaintiff's reasons for not obtaining additional treatment not harmless error, because ALJ relied on several other reasons to discount the plaintiff's

20

subjective complaints and court could not gauge extent to which ALJ relied on the plaintiff's failure to seek further treatment).

**III.  CONCLUSION**

Plaintiff has established errors warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that this matter be remanded under sentence four of 42 U.S.C. 405(g) for further administrative proceedings, including re-evaluation of Plaintiff's subjective symptom reporting and, in particular, his alleged inability to afford treatment.  As a result, Plaintiff's Motion for Judgment Reversing Decision of the Commissioner of Social Security (Docket Entry 16) should be granted, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) should be denied.


/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 9, 2022